IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Paul A. Walters, et al., | Case No. 3:10 CV 1526 |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| George R. Royer, | |
| Defendant. | |

### INTRODUCTION

Before the Court is Defendant George Royer's ("Royer") Motion for Summary Judgment, alleging Plaintiff Paul Walters' ("Walters") malpractice claim is time-barred as a matter of law (Doc. No. 6). Walters' Complaint (Doc. No. 1) alleges Royer, an Ohio-licensed attorney at law, is liable to Walters for legal malpractice in connection with Royer's failure to timely prosecute several patent applications for Walters. Royer argues Walters' claim is not timely under Ohio's one-year statute of limitations (Doc. No. 4). This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

### STATEMENT OF FACTS AND BACKGROUND

On May 6, 2009, Walters filed a grievance against Royer with the Toledo Bar Association pertaining to three patent applications that Royer had failed to timely prosecute, despite Royer telling Walters that the applications had been properly filed (Doc. No. 4, Ex. 1). Walters stated in his grievance that he was seeking disciplinary action and referral to a malpractice attorney.

Walters received a response from the Toledo Bar Association, dated June 19, 2009, stating that his claim against Royer was being investigated (Doc. No. 11, Ex. 1). The letter also indicated that Royer had been sent a copy, but Royer denies ever receiving the letter (Doc. No. 13).

On June 26, 2009, Royer faxed Walters a letter regarding one of the projects referenced in Walters' grievance, a patent for a "gas tank indicator" (Doc. No. 11, Ex. 8). In the letter, Royer advised that an amendment for the patent application had to be filed by July 20, 2009 or the application would be abandoned. Royer also advised that the amendment would take several hours to complete, but that he would not charge Walters for the time and would pay for any extension fees as he had done before. Royer concluded: "If you do not want me to complete the amendment, please advise. Otherwise, I have always intended and will complete the response."

On July 10, 2009, Royer sent Walters a proposed amendment for the gas tank indicator patent application (Doc. No. 11, Ex. 11). In the fax transmittal form, Royer informed Walters that he could elect to use the attached amendment, or he could hire another attorney to complete a response, but that any response must be filed by July 26, 2009 to maintain the pending status of the application. Royer repeated that he had no intention to bill Walters for the amendment.

On July 15, 2009, Walters sent Royer a letter demanding that he "cease any efforts to file this patent" (Doc. No. 11, Ex. 15). Walters stated that he had employed Royer eight years earlier to file the patent, and charged that Royer had allowed the patent to lapse without filing the appropriate documents despite Walters repeatedly contacting him over the years. Walters explained that it was now too late, as the whole marketplace for the gas tank indicator had changed from a "growing, thriving market" to a "dying" one since Royer was first employed to obtain the patent in 2001.

2

Walters further stated that he could not justify startup costs that could easily exceed $100,000 for a rapidly dying market.

Royer acknowledged receipt of the July 15 letter, and would comply with Walters' request (Doc. No. 11, Ex. 17). Royer further stated that there was no lapse in the patent application, provided the amendment was filed by July 26, and that the amendment was ready to be sent to the Patent Office, at no charge, if Walters approved.

On July 23, 2009, Walters sent letters to officials at the Patent and Trademark Office ("PTO") informing them that Royer no longer represented him on any filings, and requesting that the office refrain from sharing any information with Royer (Doc. No. 11, Ex. 19, 21, 22 & 34).

On July 9, 2010, Walters filed an action before this Court, asserting legal malpractice by Royer (Doc. No. 1). Royer filed a Motion for Judgment on the Pleadings, claiming the action was time-barred (Doc. No. 6). The motion was converted to a Motion for Summary Judgment under Federal Civil Rule 56 per the Case Management Conference Order (Doc. No. 10).

## STANDARD

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id.* When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

**ANALYSIS**

The statute governing the time limit for legal malpractice actions in Ohio requires that the action be commenced within one year after the cause of action accrues. O.R.C. § 2305.11(A). The Ohio Supreme Court has stated:

> [A]n action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.

*Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St. 3d 54, 58 (1989).

The rule in *Zimmie* establishes that the statute of limitations begins to run on the later of two dates: (1) when Walters discovered Royer's alleged malpractice in failing to prosecute the patents, or (2) when the attorney-client relationship between Walters and Royer terminated.

### *Discovery of Alleged Malpractice*

There is no argument that Walters discovered Royer's alleged malpractice on May 6, 2009, as evidenced by Walters' grievance to the Toledo Bar Association (Doc. No. 4, Ex. 1). The grievance form and the accompanying letter written by Walters explicitly indicate that: (1) Walters had a conversation with the PTO on May 6, 2009; (2) Walters learned from the conversation with the PTO that the patents had not been properly prosecuted by Royer; and (3) Walters requested disciplinary action and assistance in finding a malpractice attorney.

### *Walters' Grievance*

Walters argues that the attorney-client relationship with Royer was terminated, in writing, on July 15, 2009 (Doc. No. 1, ¶ 20). Therefore, Walters asserts his Complaint was timely filed on July 9, 2010 -- within one year of the termination of the attorney-client relationship. Royer argues the

4

attorney-client relationship was effectively terminated by the filing of the grievance on May 6, 2009, and therefore the complaint is time-barred. When an attorney-client relationship has terminated is a question of fact. *Omni-Food & Fashion, Inc. v. Smith,* 38 Ohio St. 3d 385, 388 (1988).

Arguing that the attorney-client relationship terminated when the grievance was filed, Royer relies on *Brown v. Johnstone*, 5 Ohio App. 3d 165 (Ohio Ct. App. 1982), where the Ohio court of appeals stated that "conduct which dissolves the essential mutual confidence between attorney and client signals the termination of the professional relationship." *Id.* at 166. The court further explained that "[i]nitiating grievance proceedings before the local bar association evidences a client's loss of confidence in his attorney such as to indicate a termination of the professional relationship." *Id.*

The court of appeals later clarified *Brown*, stating that "the termination of the attorney-client relationship depends, not on a subjective loss of confidence on the part of the client, but on conduct, an affirmative act by either the attorney or the client that signals the end of the relationship. For a trial court to grant summary judgment on this basis, such an act must be clear and unambiguous, so that reasonable minds can come to but one conclusion from it." *Mastran v. Marks,* 1990 WL 34845, at *4 (Ohio Ct. App.1990).

The Court could interpret the filing of the grievance as an affirmative act that signaled the end of the attorney-client relationship, as the Court did in *Brown.* However, *Brown* is factually distinguishable. First, the court in *Brown* noted that Brown had no contact with his lawyer after Brown contacted the bar association. Here, there is evidence that Royer remained in contact with Walters regarding the patent application after the grievance was filed and offered to continue working on the application, unpaid.

5

The court in *Brown* explained that Brown was advised by the local bar association that Johnstone was being reprimanded as a result of the grievance and that Brown should discuss the matter with another attorney. *Brown,* 5 Ohio App. 3d at 167. Here, Walters did not receive any such advice from the bar association that would advise him that the professional relationship with Royer had been, or should be, terminated.

Furthermore, while the filing of the grievance in this case could be seen as an act signaling the end of the professional relationship, the act is not so clear and unambiguous that reasonable minds could not differ on its significance. The form that Walters filled out to initiate the grievance specifically asked if Royer had withdrawn or been dismissed, to which Walters responded "no" (Doc. No. 4, Ex. 1). Further, Walters testified that until July 23, 2010, he still considered Royer to be his attorney for two other patents Royer had worked on, and that the July 15, 2009 letter only instructed Royer to cease pursuing the gas tank indicator patent (Doc. No. 11, Ex.2, at 13–14). Walters further testified that his purpose in filing the grievance was to get more information to determine whether or not Royer had acted inappropriately in handling the patents and whether malpractice had actually occurred (Doc. No. 11, Ex. 2, at 2–3). A reasonable trier of fact could come to the conclusion that the filing of the grievance was not a clear and unambiguous affirmative act that ended the attorney-client relationship.

In *Dzambasow v. Abakumov*, 2005 WL 3475792 (Ohio Ct. App. 2005), the court of appeals distinguished *Brown*, holding that whether or not the filing of a bar grievance terminates the attorney-client relationship is a question of fact. Determining that factual issue, the court looked to the totality of the circumstances surrounding the case. The court also stated, referencing the dissent in *Brown*,

6

that one who is untrained in the law may reasonably believe that the function of filing a grievance was simply to enlist the bar association's help in resolving the issue they were having with their attorney.

Royer argues that the filing of the grievance signaled a lack of trust and confidence on the part of Walters such that the attorney-client relationship was severed. However, this lack of trust and confidence alone does not necessarily end the relationship. Another Ohio appellate court, in *R.E. Holland Excavating, Inc. v. Martin, et al.*, 162 Ohio App. 3d 471 (Ohio Ct. App. 2005), distinguished *Brown*, holding that "a lack of trust and confidence in counsel may, but will not necessarily always, lead to the termination of the attorney-client relationship; in any event, that lack of trust and confidence does not constitute the termination of the relationship." *Id.* at 475–76. The court in *R.E. Holland* further held that because the litigation in which the defendant-attorney represented Holland was not quite over, a reasonable mind could find that he still represented Holland. *Id.* Here, Walters believed Royer still represented him in matters relating to other patents (Doc. No 12-1, at 74). The fact that patent applications were still pending and required additional work could lead a trier of fact to believe that Walters did not intend the attorney-client relationship to end when he filed the grievance.

### *Walters' Termination Letter*

Walters also argues that under the doctrine of "continuous representation", the statute of limitations did not begin to run until Plaintiffs took action to terminate the professional relationship in either the July 15, 2009 letter to Royer or the July 23, 2009 letters to the PTO officials. "Continuous representation" tolls the one-year statute of limitations for legal malpractice actions during the period of the attorney-client relationship. *Vail v. Townsend*, 29 Ohio App. 3d 261 (Ohio Ct. App. 1985). The doctrine allows the attorney the opportunity to correct any errors that may lead

to malpractice rather than requiring the client to immediately file a claim for any errors their attorney may commit in order to preserve their rights. *Id*. at 263.

That is what appears to have happened here -- Royer attempted to correct his mistakes after the grievance was filed but before he received the July letter from Walters. While Royer denies having received a copy of the grievance letter from the Toledo Bar Association,[1] the timing of Royer's contact with Walters about resuming work on the patent is suspect. While nearly four months had passed since Royer and Walters' last discussion about the patent application, Royer's June - July offers to continue working, unpaid, on the gas tank indicator patent began a mere one week after the grievance letter was allegedly sent to Royer. Without addressing the merits of the parties' contentions regarding receipt of the grievance letter, this Court believes a question of fact exists on whether Royer received the grievance letter and whether the continuous representation doctrine would apply. If the continuous representation doctrine applies, because the Complaint was filed July 9, 2010, the action would be timely with respect to either of the July 2009 letters sent by Walters.

In the end, this Court is presented with a factual dispute between Walters and Royer as to which of two events terminated the relationship between them: the filing of the grievance or the sending of the July 2009 letters. A jury could reasonably conclude that either of the two events terminated the parties' attorney-client relationship. *Thayer v. Fuller & Henry, Ltd.*, 503 F. Supp. 2d 887, 892 (N.D. Ohio 2007). While Walters was unsatisfied with Royer, a jury could find that Walters had decided to continue an "imperfect relationship" with Royer despite his loss of confidence in him, or that Walters had considered giving Royer a chance to correct his mistakes. *Id*. at 893.

---

[1] The parties argue about the receipt and authentication of the Toledo Bar Association letter. Regardless of whether Royer knew of the grievance when he performed the legal services, there still remains a question of material fact as to whether the filing of the grievance ended the attorney-client relationship.

8

Alternatively, a jury could find that the grievance ended the relationship. Accordingly, summary judgment at this stage is not proper.

## **CONCLUSION**

There is a genuine issue of material fact as to when the attorney-client relationship concluded. Royer's Motion for Summary Judgment is denied.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

February 24, 2011